***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms in part and reverses in part the Opinion and Award of Deputy Commissioner Houser.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement which was admitted into the record, and marked as Stipulated Exhibit (1) at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to, and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Berkley Insurance Company of the Carolinas provided defendant-employer with workers' compensation coverage at all relevant times herein.
3. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment on June 29, 2001.
4. On June 29, 2001, plaintiff's average weekly wage was $480.00.
5. At the hearing, the parties submitted a Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2), and a Packet of Industrial Commission Forms, which was admitted into the record, and marked as Stipulated Exhibit (3).
6. The issues to be determined from this hearing are as follows:
(a) Whether plaintiff has reached maximum medical improvement from his compensable back injury;
(b) Whether plaintiff's knee conditions and his mental health conditions are causally related to the compensable back injury and therefore, compensable conditions;
(c) Whether plaintiff is presently employable due to his compensable back injury and if so, whether he is required to cooperate with vocational rehabilitation; and
(d) Whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty (30) years of age, with his date of birth being August 31, 1972. Prior to working for defendant-employer, plaintiff worked for a fastener company owned by his father.
2. On March 15, 1998, plaintiff was hired by defendant-employer as an Inside Sales Coordinator. Defendant-employer's business involves the distribution of fasteners, dealing mainly with computer fasteners, but also with standard construction fasteners such as nuts, bolts, screws, and washers. As an Inside Sales Coordinator, plaintiff's duties included taking orders from customers, computer data entry, purchasing, procurement, and warehouse inventory control, which involved receiving shipping, and taking pallets off delivery trucks. Plaintiff's work with defendant-employer required lifting.
3. On February 3, 2000, plaintiff injured his lower back while working for defendant-employer. Following that injury, plaintiff received medical treatment and returned to work, with his symptoms resolving in late 2000 or early 2001.
4. On June 29, 2001, plaintiff again injured his lower back while moving a box as he scanned material for a stock check. Plaintiff's claim for this injury was accepted as compensable with defendants filing an Industrial Commission Form 60 on or about February 18, 2002. Pursuant to the Form 60, plaintiff received ongoing total disability benefits at the rate of $320.00 per week.
5. Following his injury on June 29, 2001, plaintiff continued to work for approximately two weeks and then sought medical treatment. Plaintiff was initially treated at Physicians East on July 18, 2001 and an MRI was performed on July 26, 2001. Plaintiff was then referred to Dr. Barbara Lazio, a neurosurgeon, who initially examined him on August 7, 2001. Based upon her examination and plaintiff's medical records, Dr. Lazio opined that plaintiff had radiculopathy from a herniated lumbar disk at the L5-S1 level. After a period of physical therapy in which plaintiff's symptoms did not improve, Dr. Lazio recommended surgery and a left L5-S1 microdiscectomy was performed on September 7, 2001.
6. On October 23, 2001, plaintiff reported to Dr. Lazio that he experienced continuing back pain, along with pain and some numbness in his lower extremities. Prior to that date, plaintiff had not reported bilateral lower extremity pain, having experienced it only in his left leg. During her deposition, Dr. Lazio testified that a second MRI revealed that plaintiff had postoperative scarring in the area of his surgery, and that it was common for patients to experience a recurrence of radicular pain after a surgical procedure, either from inflammation, scar tissue or both. For this post-operative pain, Dr. Lazio prescribed anti — inflammatory medication. During this October 23, 2001 examination, Dr. Lazio also noted that plaintiff displayed significant signs of depression and anxiety.
7. During her deposition, Dr. Lazio opined that the radicular pain related to plaintiff's herniated disk improved as of October 23, 2001 and that she could not relate his other symptoms to his back condition. Further, Dr. Lazio opined that plaintiff's depression and new lower extremity symptoms were separate health issues from his June 29, 2001 injury and herniated disk. For these reasons, Dr. Lazio referred plaintiff to a primary care physician and opined that there was no further medical treatment that she could provide. Although Dr. Lazio made this referral, she clarified during her testimony that this referral was not based upon a belief that these other problems were related to plaintiff's compensable back injury.
8. On January 17, 2002, Dr. Lazio opined that plaintiff reached maximum medical improvement from his June 29, 2001 injury and related surgery, and released him to return, without restrictions, to his pre-injury employment. During her deposition, Dr. Lazio testified that these opinions were based upon her treatment and knowledge of his back injury and surgery and not upon his other physical symptoms, psychological problems or depression. Dr. Lazio did not assign a permanent partial disability rating to plaintiff's back and has testified that to do so would require a re-examination of plaintiff or results of an independent medical examination.
9. Plaintiff, without authorization from defendants, then consulted with Dr. Mary Conway, an internist. On February 11, 2002, plaintiff presented for an initial examination with Dr. Conway at which time he reported low back pain and bilateral lower extremity radicular pain along with his psychological symptoms. Dr. Conway prescribed Methadone for plaintiff's pain, and noted some improvement in his symptoms with its use. Dr. Conway also referred plaintiff to Dr. Cynthia Lopez for an EMG-nerve conduction study, the results of which were normal, indicating no evidence of radiculopathy in either lower extremity. Although plaintiff reports that he is unable to return to work, Dr. Conway has assigned no specific restrictions and testified that she would defer to Dr. Lazio or Dr. Lopez on that issue. Dr. Lopez was not deposed subsequent to the hearing before the Deputy Commissioner.
10. On March 28, 2001, prior to his injury by accident, plaintiff began psychological treatments with Dr. Ateiat Phillips, a psychiatrist, who prescribed Adderall and Wellbutrin, and referred plaintiff for individual therapy to Mr. Sean Pumphrey, MSW. On April 23, 2001, two months prior to his back injury, plaintiff complained of not liking his job with defendant — employer and his doses of Wellbutrin and Adderall were increased. Plaintiff testified, at the hearing before the Deputy Commissioner, that he had been seeking a psychiatrist for treatment since his move to North Carolina three years earlier and that his symptoms had worsened over that period. The symptoms plaintiff reported experiencing during that period included increased depression, sleep problems, a decrease in concentration and memory and suicidal thoughts. Additionally, the medical evidence reflects that plaintiff experienced depression since thirteen (13) years of age and has a history of hospitalizations due to overdoses and self-mutilating behaviors.
11. Subsequent to his June 29, 2001 injury by accident, plaintiff continued treatment with Dr. Phillips and Mr. Pumphrey. During her deposition, Dr. Phillips opined that any stressor whether physical, emotional or mental would negatively impact plaintiff's depression. Regarding the relationship between plaintiff's physical condition and his psychological problems, Dr. Phillips also opined that plaintiff's depressive symptoms worsened due to his physical pain, inability to return to work and financial stress. To a reasonable degree of medical certainty, Dr. Phillips further opined that plaintiff's back pain and inability to work aggravated plaintiff's depression and other psychological problems.
12. Dr. Phillips, a psychiatrist, testified that plaintiff's depressive symptoms were worse due to his physical pain and that flare-ups of plaintiff's depression could limit his ability to work.
13. The competent evidence in the record establishes that plaintiff's psychological problems and depression are worse now than on June 29, 2001. The undersigned give great deference to Dr. Phillips' opinions and testimony and the credible evidence of record establishes that there is a causal link between plaintiff's compensable back injury of June 29, 2001 and the pain which has exacerbated his psychological problems and depression. The undersigned give greater weight to the testimony and opinions of Dr. Phillips rather than to Dr. Lazio regarding any causal relationship between plaintiff's June 29, 2001 injury by accident and any pain causing physical conditions that have exacerbated plaintiff's psychological problems. A psychiatrist like Dr. Phillips is better able to identify this link than Dr. Lazio, a neurosurgeon. Furthermore, the undersigned give greater weight to Dr. Phillips' opinion regarding plaintiff's inability to return to work than to Dr. Lazio's belief that plaintiff had reached maximum medical improvement as Dr. Lazio's opinions were not based on plaintiff's total health but were based only upon her treatment of plaintiff's back and not upon his psychological or depressive problems.
14. The competent evidence in the record further establishes that plaintiff's post surgical lower extremity problems and the exacerbation of his psychological problems and depression are the natural result of or causally related to his June 29, 2001 injury by accident.
15. Based on the totality of the evidence of record, the undersigned find that the injury to plaintiff's legs and plaintiff's increased depression are the natural result of his compensable injury by accident of June 29, 2001 and that due to the increase in plaintiff's depression, along with his physical pain, he is unable to return to work at this time.
16. The undersigned hereby designate Dr. Ateiat Phillips as plaintiff's treating psychiatrist.
17. This matter was defended upon reasonable grounds not indicative of stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendants on June 29, 2001. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's post surgical lower extremity problems and the exacerbation of his psychological problems and depression are the natural result of or causally related to his June 29, 2001 injury by accident. N.C. Gen. Stat. § 97-2(6).
3. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to receive temporary total disability compensation at a rate of $320.00 per week for the period beginning January 18, 2002 and continuing until further Order of the Commission. N.C. Gen. Stat. §97-29.
4. Plaintiff is entitled to have defendant pay for all of plaintiff's medical expenses incurred or to be incurred as a result of plaintiff's June 29, 2001 compensable injury as may be required to provide relief, effect a cure or lessen the period of disability including his psychiatric treatment. Dr. Ateiat Phillips is hereby designated as plaintiff's treating psychiatrist. N.C. Gen. Stat. §§ 97-2(19), 97-25.
5. This matter was defended upon reasonable grounds and plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $320.00 per week for the period beginning January 18, 2002 and continuing until further Order of the Commission. Compensation due which has accrued shall be paid in a lump sum subject to attorney's fees hereinafter provided.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability including his psychiatric treatment. Dr. Ateiat Phillips is hereby designated as plaintiff's treating psychiatrist.
3. A reasonable attorney's fee in the amount of twenty-five percent of the compensation awarded to plaintiff under paragraph one of this award is hereby approved to be deducted from the lump sum due plaintiff and shall be paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
4. Defendants did not defend this case without reasonable grounds and therefore plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
5. Each side shall bear its own costs.
This the ___ day of March, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER